IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


GARY RAY REEDER,

                    Plaintiff,

vs.                                   Case No. 13-1201-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the

Commissioner of Social Security denying the plaintiff disability

insurance benefits and supplemental security income payments.

The matter has been fully briefed by the parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.

§ 405(g), which provides that "the findings of the Commissioner

as to any fact, if supported by substantial evidence, shall be

conclusive."  The court should review the Commissioner's

decision to determine only whether the decision was supported by

substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984

(10th Cir. 1994).  Substantial evidence requires more than a

scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On July 27, 2012, administrative law judge (ALJ) Michael R. Dayton issued his decision (R. at 12-28).[1] Plaintiff alleges that he had been disabled since November 1, 2007 (R. at 12). Plaintiff is insured for disability insurance benefits through

---

[1] This is the 2nd ALJ decision. The 1st ALJ decision, dated May 14, 2010 (R. at 103-120) was remanded by the Appeals Council on June 30, 2011 (R. at 121-125).

March 31, 2010 (R. at 14).  At step one, the ALJ found that
plaintiff did not engage in substantial gainful activity since
the alleged onset date (R. at 14).  At step two, the ALJ found
that plaintiff had the following severe impairments:  mild
scoliosis of the thoracic spine with possible partial
compression fracture of the T-11, obesity, dysthymic disorder,
more recently diagnosed as bipolar disorder and depression and
generalized anxiety disorder (R. at 14).  At step three, the ALJ
determined that plaintiff's impairments do not meet or equal a
listed impairment (R. at 15).  After determining plaintiff's RFC
(R. at 17), the ALJ determined at step four that plaintiff has
no past relevant work (R. at 26).  At step five, the ALJ found
that plaintiff can perform jobs that exist in significant
numbers in the national economy (R. at 26-27).  Therefore, the
ALJ concluded that plaintiff was not disabled (R. at 27-28).

**III.  Did the ALJ err in his evaluation of the medical opinion
evidence in regards to plaintiff's mental limitations?**

In his RFC findings, the ALJ found that plaintiff is able
to understand and remember simple to complex instructions.  He
is able to sustain concentration at a reasonable pace over a
full workday.  Plaintiff is able to relate sufficiently well to
supervisors and co-workers for task completion in jobs not
requiring significant social interaction.  He has no limitation
in adaptation (R. at 17).

5

Dr. Mintz performed a consultative examination on August 4, 2008 (R. at 427-430), and a 2nd examination on February 13, 2009 (R. at 465-467).  In both examinations, Dr. Mintz found that plaintiff may have some difficulty relating well to co-workers and supervisors, he is able to understand simple to complex instructions, and his concentration capacity appears intact (R. at 430, 466).  The ALJ accorded "substantial" weight to his opinions (R. at 25).

Dr. Warrender prepared a mental RFC assessment on February 26, 2009, finding that plaintiff had moderate limitations in the ability to work in coordination with or proximity to others without being distracted by them, and in the ability to interact appropriately with the general public (R. at 482-483).  He found that plaintiff can relate sufficiently well with supervisors and coworkers for task completion in jobs not requiring significant social interaction (R. at 484).  The ALJ accorded "considerable" weight to his opinions (R. at 26), and his mental RFC findings clearly follow the opinions of Dr. Mintz and Dr. Warrender.

The file also contains four other mental assessments from three treatment providers and one psychologist who performed a psychological evaluation.  The first one is from Jeffrey Ready, LCP (licensed clinical psychologist), a treatment provider who saw plaintiff on three occasions in 2006 and on five other occasions in 2009-2010 (R. at 575-582, 585-586, 589-590, 594-

599, 609-610, 613-614, 617-618, 619, 600-03, 620-21).  On
February 16, 2010 (after 3 contacts with plaintiff in 2006, 3
contacts with plaintiff in 2009 and 1 contact with plaintiff in
2010), LCP Ready opined that plaintiff was moderately limited in
2 categories and markedly limited in 2 other categories (R. at
512-513, 20 categories in assessment).

　　　　The second assessment is from Dr. Brooks, a licensed
psychologist, who performed a diagnostic assessment on August 9,
2010 (R. at 552-557).  Dr. Brooks performed a mental status
examination and utilized the Millon Clinical Multiaxial
Inventory-3rd edition (MCMI-III) (R. at 555).  He concluded,
based on his clinical findings, that plaintiff's emotional
disturbance is of the severity and magnitude sufficient enough
to interfere with his ability to consistently perform daily
tasks, and preclude him from performing an occupation (R. at
557).  He found plaintiff moderately limited in 4 categories and
markedly limited in 16 categories (R. at 548-549, 20 categories
in assessment).  Dr. Brooks diagnosed plaintiff with
schizophreniform disorder, bipolar disorder, and panic disorder
(R. at 556).

　　　　The third assessment is from Pamela Allen, a licensed
clinical social worker (LCSW), a treatment provider who saw
plaintiff on six occasions in 2011-2012 (R. at 604-07, 624-25,
627, 632, 636, 644, 687).  On December 12, 2011, after four

treatment sessions, LCSW Allen opined that plaintiff was moderately limited in 2 categories, markedly limited in 2 categories, and extremely limited in 2 categories (R. at 572-573, 8 categories in assessment).

The fourth assessment is from Elizabeth Garton (advanced registered nurse practitioner, ARNP), a treatment provider who saw plaintiff on ten occasions in 2011-2012 (R. at 628-631, 633-634, 637-638, 640-641, 645-646, 648-649, 661-662, 680-681, 683-684, 688-689).  ARNP Garton diagnosed plaintiff with schizoaffective disorder, bipolar type (R. at 631, 661).  On May 12, 2012, after sessions, she prepared an assessment indicating that plaintiff was moderately limited in 6 categories and markedly limited in 1 category (R. at 654-655, 8 categories in assessment).

The ALJ gave limited or little weight to these four assessments (R. at 20, 23-25).  The ALJ noted the differences between the four assessments (R. at 25), and their alleged reliance on plaintiff's subjective complaints (R. at 25). However, all four assessments found that plaintiff was at least markedly limited in her ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an

unreasonable number and length of rest periods (R. at 512, 548, 573, 655).[2]

In the case of Chapo v. Astrue, 682 F.3d 1285 (10th Cir. 2012), the ALJ gave "great" weight to the opinions of Dr. Amin, who examined plaintiff in March 2008. Id. at 1287, 1292. The court noted that the medical record underwent material changes in the 20 months between Dr. Amin's report and the ALJ's decision in November 2009. However, the agency did not seek another exam by Dr. Amin or provide him the new information and request a follow-up to his opinion. Thus, while Dr. Amin's opinion may have been supported by the record when made in March 2008, it did not account for material objective evidence developed long afterward. The court found that the reliance on Dr. Amin's "patently stale" opinion of Dr. Amin was troubling, notwithstanding the rejection of the opposing opinion of Dr. Krause in November 2009. Although the court did not need to make a definitive determination on this question, the ALJ was encouraged on remand to obtain an updated exam or report in order to forestall any potential problem from arising. Id. at 1293.

Dr. Mintz performed his 2nd consultative examination on February 13, 2009, and only diagnosed dysthymia, moderate, and generalized anxiety disorder with panic attack symptoms (R. at

---

[2] LCSW Allen opined that plaintiff was extremely limited in this category (R. at 573).

467).  The ALJ decision was made on July 27, 2012, or 3 ½ years after the assessment by Dr. Mintz.  When the Appeals Council vacated the 1st ALJ decision on June 30, 2011, it noted that the assessment of Dr. Brooks needed to be evaluated in light of the additional diagnoses of bipolar disorder, probable adult attention deficit disorder without hyperactivity, schizophreniform disorder, panic disorder with agoraphobia, and social phobia (R. at 122).  Subsequent to that decision, in November 2011 and August 2012, ARNP Garton diagnosed plaintiff with schizoaffective disorder, bipolar type (R. at 631, 688).

In Chapo, the court was concerned with the agency's reliance on a patently stale medical opinion that was made 20 months prior to the ALJ decision.  In the case before the court, the ALJ relied on a medical opinion made 41 months prior to the ALJ decision, despite substantial and significant additions to the medical record, including new diagnoses not mentioned by Dr. Mintz.  Many of these diagnoses, including schizoaffective disorder, or schizophreniform disorder, were not even mentioned by the ALJ in his decision.

Furthermore, the assessment by Dr. Brooks included a psychological test, the MCMI-III (R. at 555).  The MCMI-III provides a measure of 24 personality disorders and clinical syndromes, and assists clinicians in psychiatric diagnosis (http://psychcentral.com/lib/million-clinical-multiaxial-

inventory-mcmi-iii0006106, Sept. 2, 2014).  No testing was done by Dr. Mintz in his assessment.  Dr. Brooks found the validity indices of this profile to be valid (R. at 555).

The ALJ also gave less weight to at least two of the opinions because they allegedly relied on plaintiff's subjective complaints (R. at 24-25).[3]  In the case of <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." <u>Id</u>. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*" <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." <u>Id</u>. at 1253.

Subsequently, in the case of <u>Victory v. Barnhart</u>, 121 Fed. Appx. 819 (10th Cir. Feb. 4, 2005), the court held:

---

[3] Defendant also asserts in their brief that the ALJ discounted the opinions of Dr. Brooks because the opinions were based in large part on plaintiff's subjective allegations (Doc. 21 at 6).

The ALJ's finding that Dr. Covington's opinion was based on claimant's own subjective report of her symptoms impermissibly rests on his speculative, unsupported assumption. See Langley, 373 F.3d at 1121 (holding that ALJ may not reject a treating physician's opinion based on speculation). We find no support in the record for the ALJ's conclusion. Nothing in Dr. Covington's report indicates that he based his opinion on claimant's subjective complaints, and the ALJ's finding ignores all of Dr. Covington's examinations, medical tests, and reports. Indeed, the ALJ's discussion of Dr. Covington omits entirely his March 22, 2001 examination and report. His April 3, 2001 statement might well have been based on his recent first-hand examination and observation of claimant during this examination, performed less than two weeks earlier, rather than on claimant's subjective complaints, as the ALJ speculated. See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000) (noting that the treating physician's opinion may "reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time").

121 Fed. Appx. at 823-824.

    As Langley makes clear, the ALJ must have a legal or evidentiary basis for asserting that a medical source report was based on plaintiff's subjective complaints.  However, the ALJ did not cite to either a legal or evidentiary basis for his assertion that the opinions of LCSW Allen or ARNP Garton were based solely or primarily on plaintiff's subjective complaints. LCSW Allen prepared her assessment on the same day she had a therapy session with the plaintiff; this was the fourth therapy

session (R. at 573, 636).  ARNP Garton prepared her assessment on May 16, 2012, the same day she saw the plaintiff (R. at 655, 661-662).  This was her 7th session with the plaintiff (R. at 628-631, 633-634, 637-638, 640-641, 645-646, 648-649, 661-662). As the court stated in Victory, their assessments might well have been based on their first-hand examination and observations of the plaintiff during those treatment sessions, rather than on plaintiff's subjective complaints, as the ALJ speculated. Finally, the opinions of Dr. Brooks were based, in part, on the valid test results of the MCMI-III.

Furthermore, the practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements.  Thomas v. Barnhart, 147 Fed. Appx. 755, 759-760 (10th Cir. Sept. 2, 2005); Miranda v. Barnhart, 205 Fed. Appx. 638, 641 (10th Cir. Aug. 11, 2005).  A psychological opinion may rest either on observed signs and symptoms or on psychological tests.  Langley v. Barnhart, 373 F.3d 1116, 1122 (10th Cir. 2004); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  The ALJ cannot reject a psychologist's opinion solely for the reason that it was based on a claimant's responses because such rejection impermissibly substitutes the ALJ's judgment for that of the psychologist.  Thomas, 147 Fed. Appx. at 760; Miranda, 205 Fed. Appx. at 641.

Dr. Brooks noted in his assessment in August 2010 that plaintiff reported hallucinations about every other day (R. at 556).  The ALJ noted that they were not well documented prior to 2010 (R. at 20).  However, treatment notes in 2011 and 2012 from LCSW Allen and ARNP Garton (these treatment notes are on the same day that they prepared their assessments) indicate that plaintiff is still having some difficulty with hallucinations, but that the medication was helping (R. at 636, 661).

In Chapo, the court found it "troubling" that the ALJ relied on a "patently stale" assessment that was prepared 20 months before the ALJ decision, especially in light of the fact that the medical records had undergone material changes in those 20 months.  In the case before the court, the ALJ relied on an assessment prepared 41 months prior to the ALJ decision, and failed to discuss additional diagnoses that were made during that period.  As noted above, even the Appeals Council pointed out back on June 30, 2011 that additional diagnoses were contained in the new evidence which needed to be addressed (R. at 122).

Although there are inconsistencies with the four assessments given little weight by the ALJ, all four of them demonstrate limitations in excess of the limitations found by the ALJ, who relied on the opinions of Dr. Mintz and Dr. Warrender prepared 41 months before the ALJ decision.  The

14

assessment of Dr. Brooks was prepared in August 2010, and the assessments by treatment providers Ready, Allen and Garton were prepared in 2010, 2011 and 2012, and all of them were prepared after numerous treatment sessions with the plaintiff.[4]  Only Dr. Brooks used a test, the MCMI-III, to assist him in his assessment.  Furthermore, all four of them agreed that plaintiff was at least markedly limited in her ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (R. at 512, 548, 573, 655).[5]  Finally, the ALJ erred by discounting some of these opinions because of their alleged reliance on plaintiff's subjective complaints, as set forth above.  For all of these reasons, the court finds that substantial evidence does not support the ALJ's mental RFC assessment, and the case shall be remanded in order for defendant to reconsider the four mental RFC assessments, and to consider whether to obtain an updated assessment which takes into consideration the treatment notes and assessments in the record since the assessment in February 2009 relied on by the ALJ.

---

[4] Subsequent to the assessments by Dr. Mintz and Dr. Warrender in February 2009, LCP Ready saw plaintiff on 5 occasions in 2009-2010, LCSW Allen saw plaintiff on 6 occasions in 2011-2012, and ARNP Garton saw plaintiff on 10 occasions in 2011-2012.
[5] LCSW Allen opined that plaintiff was extremely limited in this category (R. at 573).

**IV.  Did the ALJ err in his evaluation of the medical opinion evidence in regards to plaintiff's physical limitations?**

The ALJ, in making his physical RFC findings, gave great weight to the opinions of Dr. King and Dr. Parsons (R. at 26, 423-424, 445-452, 462).  Although the court finds no clear error in the ALJ's reliance on these opinions, subsequent to the ALJ decision, plaintiff included in the record a physical RFC assessment by NP French (R. at 698-699).  It is undated.  Thus, the court cannot determine if the assessment is from an examining or a treating source, and the form provides almost no explanation in support of the limitations.  Because this case is being remanded for other reasons, on remand, the parties should obtain more information about the date, source and basis for this assessment, and the ALJ should make a finding regarding its impact, if any, on plaintiff's physical RFC.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 11th day of September 2014, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge